IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
WENDY ARLENE YOUNG,          )
                             )
               Plaintiff,    )
                             )
        v.                   )        1:09CV1008
                             )
MICHAEL J. ASTRUE,           )
Commissioner of Social       )
Security,                    )
                             )
               Defendant.    )
```

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Wendy Arlene Young, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). The Court has before it the certified administrative record and the parties have filed cross-motions for judgment.

## PROCEDURAL HISTORY

Plaintiff applied for DIB on January 26, 2006, alleging a disability onset date of October 5, 2005. (Tr. 56-58.) The application was denied initially and upon reconsideration. (Tr. 38, 39, 41-43, 45-48.) Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. 40.) Present at

the hearing, held on June 3, 2008, were Plaintiff, her attorney, and a vocational expert ("VE").[1] (Tr. 262.) On July 7, 2008, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. (Tr. 11-21.) On October 26, 2009, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review. (Tr. 5.)

In making this disability determination, the ALJ made the following findings later adopted by the Commissioner:

1.   [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2010.

2.   [Plaintiff] has not engaged in substantial gainful activity since October 5, 2005, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

. . .

3.   [Plaintiff] has the following severe impairments: obesity and degenerative joint disease (20 CFR 404.1520(c)).

4.   [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

. . .

5.   After careful consideration of the entire record, the undersigned finds that [Plaintiff] had the residual functional capacity to perform sedentary work as defined

---

[1] Prior to the hearing, Plaintiff amended her application for DIB to assert a closed period of disability from October 5, 2005 to March 31, 2007, the date on which her earnings as a daycare provider rose to the level of substantial gainful activity. (Tr. 267.)

2

in 20 CFR 404.1567(a). [Plaintiff] was able to sit for 6 hours with normal breaks; stand/walk for 6 hours with normal breaks, lift/carry up to 10 pounds occasionally and 5 pounds frequently with no frequent postural activities and no constant use of her hands.

(Tr. 16-17.)

In light of the findings regarding residual functional capacity ("RFC"), the ALJ determined that Plaintiff could not perform her past relevant work as a batcher operator, cashier, childcare provider, cone winder, knitter, picker/packer, motor re-wirer and stocker. (Tr. 19.) He found transferability of job skills immaterial to the disability determination, because using the Medical-Vocational Rules as a framework for decision supported a finding that Plaintiff was not disabled regardless of whether she had transferable skills. (Tr. 20.) Based on the VE's testimony, and after considering Plaintiff's age, education, work experience and RFC, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Id. (citing 20 C.F.R. §§ 404.1560(c) and 404.1566).) Accordingly, the ALJ decided that Plaintiff was not under a "disability," as defined in the Act, at any time from October 5, 2005, through the date of his decision, July 7, 2008. (Tr. 21.)

## DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v.

3

<u>Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as

4

adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting the issue so framed, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process,

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." <u>Hall</u>, 658 F.2d at 264. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." <u>Id.</u> (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." <u>Albright v. Commissioner of Soc. Sec. Admin.</u>, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not,

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." <u>Hunter</u>, 993 F.2d at 35 (internal citations omitted).

6

benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary

_____

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

7

burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  <u>Hines</u>, 453 F.3d at 567.[5]

### Assignments of Error

In this case, the ALJ found that Plaintiff, who then worked as a daycare provider but not at a level constituting substantial gainful activity, met her burden at step one of the SEP.  (Tr. 16.) At step two, he further determined that Plaintiff suffered from two severe impairments: obesity and degenerative joint disease.  (<u>Id.</u>) Although the ALJ found at the third and fourth steps that these impairments limited Plaintiff to sedentary work with restrictions which precluded her from returning to her past relevant work (Tr. 17-19), he ultimately concluded at step five, based on the VE's testimony, that Plaintiff could perform other jobs available in the community and was therefore not disabled (Tr. 19-21).

Plaintiff argues, however, that substantial evidence fails to support the Commissioner's findings at steps two, three, and five and/or that the ALJ incorrectly applied the law at these steps. (Docket Entry 12 at 5-13.)  Specifically, she contends that the ALJ

---

[5] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

failed to (1) accord controlling weight to the opinion of Plaintiff's treating orthopedist (id. at 5-8), (2) incorporate Plaintiff's alleged need to take frequent breaks into her RFC and the hypothetical question to the VE (id. at 8), (3) consider Plaintiff's obesity in combination with other severe impairments (id. at 8-10), (4) identify Plaintiff's back pain and carpal tunnel syndrome as severe impairments and to include them in the hypothetical question to the VE (id. at 10-11), and (5) properly evaluate Plaintiff's pain in accordance with Craig, 76 F.3d at 591-96 (id. at 11-13). Defendant contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled. (Docket Entry 14 at 3-12.)

## 1. Treating Physician's Opinion

Plaintiff first claims that the ALJ committed a "fatal" error by failing to give controlling weight to the opinion of Plaintiff's treating orthopedist, Dr. Louis C. Almekinders, in violation of the "treating physician rule." (Docket Entry 12 at 6 (citing 20 C.F.R. § 404.1527(d)(1)).) On June 12, 2006, Dr. Almekinders opined that Plaintiff could return to sedentary work if she had "frequent breaks consisting of a 15-minute break every two hours as needed." (Tr. 133.) Relying on Johnson v. Barnhart, 434 F.3d 650 (4th Cir. 2005), Plaintiff maintains that in order to reject a treating physician's opinion, the ALJ must cite to "persuasive contradictory

9

evidence." (Docket Entry 12 at 6.) Plaintiff asserts that the ALJ

here failed to cite to any persuasive contradictory evidence and

merely found that Dr. Almekinders' opinion was "without

explanation." (<u>Id.</u>)[6] These contentions lack merit.

The treating physician rule generally requires an ALJ to give

controlling weight to the opinion of a treating source as to the

nature and severity of a claimant's impairment, on the ground that

treating sources "provide a detailed, longitudinal picture of [the

claimant's] medical impairment(s) [which] may bring a unique

perspective to the medical evidence that cannot be obtained from

the objective medical findings alone or from reports of individual

examinations, such as consultative examinations or brief

hospitalizations." 20 C.F.R. § 404.1527(d)(2). The rule also

recognizes, however, that not all treating sources or treating

source opinions deserve such deference.

---

[6] Plaintiff also invites the Court to "note the significant difference
between [her] brief and the ALJ's decision" and asserts that the ALJ's decision
"omits so much evidence" that Plaintiff's case is "immeasurably stronger than the
ALJ's telling of it." (Docket Entry 12 at 5-6.) An ALJ need not discuss every
piece of evidence in the record in issuing decisions on disability. <u>See, e.g.</u>,
<u>Black v. Apfel</u>, 143 F.3d 383, 386 (8th Cir. 1998); <u>Diaz v. Chater</u>, 55 F.3d 300,
308 (7th Cir. 1995). Significantly, despite Plaintiff's generalized assertion
that her case is "immeasurably stronger" than it appears in the ALJ's decision,
she points to no specific evidence of record that the ALJ failed to discuss that
might have led the ALJ to formulate a more restrictive RFC, much less find her
disabled. <u>See Miles v. Astrue</u>, No. 8:07-3164-RBH, 2009 WL 890651, at *14 (D.S.C.
Mar. 30, 2009) (unpublished) ("[P]laintiff details various pieces of evidence
which she contends the ALJ misconstrued . . . , however, [she] has not explained
how such evidence, if fully considered, would have proven additional limitations
sufficient to eliminate the possibility that [she] could perform the [class of]
work [the ALJ found she could perform].")

10

First, the nature and extent of each treatment relationship may temper the weight afforded. 20 C.F.R. § 404.1527(d)(2)(ii). Further, a treating source's opinion controls only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590; accord Mastro, 270 F.3d at 178.

In this case, although the ALJ did not specifically use the words "persuasive contradictory evidence," he provided ample support for his decision to decline to give controlling weight to Dr. Almekinders' opinion regarding frequent breaks. In this regard, the ALJ found that Dr. Almekinders had not provided an explanation for his opinion that Plaintiff needed frequent breaks immediately after the ALJ had detailed Dr. Almekinders' treatment notes leading up to his June 12, 2006 opinion regarding frequent breaks. (Tr. 17-18.) In that litany, the ALJ noted that, on May 1, 2006, Dr. Almekinders released Plaintiff to return to work on May 29, 2006, without restrictions. (Tr. 18; see also Tr. 138-40.) The ALJ next observed that, on June 6, 2006, Dr. Almekinders[7] examined Plaintiff and observed that Plaintiff had not returned to

_____

[7] The ALJ mistakenly referred to the treatment note in question as written by Dr. Janet Dear on June 6, 2006. (Tr. 18.)

11

work despite his release and continued to complain of musculoskeletal impairments as an impediment to returning to work, even though she ran a day care business out of her home. (Tr. 18; see also Tr. 134-35.) The ALJ further pointed out that, after examination revealed a non-antalgic gait and no knee swelling, Dr. Almekinders declared Plaintiff at maximum medical improvement with a 10 percent permanent partial impairment[8] to her leg and released Plaintiff to return to sedentary work with no further restrictions. (Id.) The ALJ thus properly cited to persuasive contradictory evidence in accordance with Johnson and Craig to support his decision not to afford Dr. Almekinders' opinion regarding breaks controlling weight.

Even if the ALJ had not cited to sufficient persuasive contradictory evidence to justify his discounting of Dr. Almekinders' opinion, the Court would still not have adequate grounds for reversal. The Social Security Administration's Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work – Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work provides that sedentary jobs customarily have "a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals." SSR 96-9p at

---

[8] Under the North Carolina Workers' Compensation Act, a physician rates injuries according to the percentage of impairment of the affected part. N.C. Industrial Commission Rating Guide (February 15, 2000 Update), http://www.ic.nc.gov/ncic/pages/ratinggd.htm (last visited January 18, 2013).

*6. Thus, the sedentary jobs that the VE testified Plaintiff remained capable of performing sufficiently encompassed Dr. Almekinders' opinion that Plaintiff needed a 15-minute break every two hours.

The foregoing conclusion moots Plaintiff's alternative argument (based on 20 C.F.R. § 1512(e)(1)) that, if the ALJ found Dr. Almekinders' notes inadequate to explain his opinion, the ALJ should have re-contacted Dr. Almekinders as part of the ALJ's duty to develop the record.  (Docket Entry 12 at 7.)  A remand is not "'warranted any time the claimant alleges that the ALJ has neglected to complete the record.'"  Hood v. Astrue, No. SKG-08-2240, 2009 WL 4944838, at *8 (D. Md. Dec. 14, 2009) (unpublished) (quoting Brown v. Shalala, 44 F.3d 931, 935 n.9 (11th Cir. 1995)). Instead,

> [t]he Fourth Circuit has held that a case should be remanded for failure to develop the administrative record "[w]here the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, *and* such failure is prejudicial to the claimant . . ."  Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980)(emphasis added).  "Prejudice can be established by showing that additional evidence would have been produced . . . and that the additional evidence might have led to a different decision."  Ripely v. Chater, 67 F.3d 552, 557 n. 22 (5th Cir. 1995).  If a plaintiff fails to show that he/she was prejudiced by the ALJ's failure to develop the record, remand is not warranted.

Zook v. Commissioner of Soc. Sec., No. 2:09cv109, 2010 WL 1039456, at *4 (E.D. Va. Feb. 25, 2010)(unpublished)(brackets and ellipses

in original); see also Bell v. Chater, 57 F.3d 1065, 1995 WL
347142, at *5 (4th Cir. 1995)(unpublished)(finding no reversible
error where Plaintiff "failed to indicate how . . . unidentified
[medical] reports would have impacted the ALJ's assessment");
Scarberry v. Chater, 52 F.3d 322, 1995 WL 238558, at *4 n.13 (4th
Cir. 1995)(unpublished)(ruling that "ALJ had before him sufficient
facts to determine the central issue of disability" where the
plaintiff's attorney failed to "identify what the missing evidence
would have shown").

Here, Plaintiff has failed to identify any additional evidence
that, if made of record, would have resulted in a determination of
disability, because even had the ALJ fully credited Dr.
Almekinders' opinion regarding Plaintiff's need to take frequent
breaks, the jobs cited by the VE already encompassed that
restriction. See SSR 96-9p at *6. Plaintiff's argument also fails
because the ALJ had sufficient evidence upon which to make his
decision and thus had no duty to re-contact a treating source.
See, e.g., Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004)
("An ALJ need recontact medical sources only when the evidence
received is inadequate to determine whether the claimant is
disabled.") (citing 20 C.F.R. § 404.1512(e)); White v. Barnhart,
287 F.3d 903, 908 (10th Cir. 2001) ("[I]t is not the rejection of
the treating physician's opinion that triggers the duty to

14

recontact the physician; rather it is the inadequacy of the 'evidence' the ALJ 'receives from the claimant's treating physician' that triggers the duty.")(quoting 20 C.F.R. 416.912(e)); Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996) (finding no duty to contact when "[t]he ALJ had before him a complete medical history, and the evidence received from the treating physicians was adequate for him to make a determination as to disability").

## 2. RFC and Hypothetical Question

Plaintiff next contends that the ALJ erroneously failed to include her need to take frequent breaks in her RFC or in the hypothetical question to the VE. (Docket Entry 12 at 8.) This contention lacks merit. As discussed above, the ALJ's decision to discount Dr. Almekinders' opinion regarding Plaintiff's alleged need to take frequent breaks was supported by substantial evidence. Furthermore, as discussed above, Plaintiff's alleged need to take breaks every two hours is compatible with the jobs identified by the VE at the hearing. See SSR 96-9p at *6. Thus, the ALJ did not err in formulating the RFC or questioning the VE and substantial evidence supports the ALJ's determination that a significant number of jobs that Plaintiff can perform exist in the national economy.

## 3. Obesity

Next, Plaintiff contends that the ALJ erred at step three by failing to consider her obesity in combination with her other

15

severe impairments, citing Social Security Ruling 01-2p, <u>Titles II</u> <u>and XVI: Evaluation of Obesity</u>, and at step five by failing to include obesity in the hypothetical questions to the VE, citing <u>Walker v. Bowen</u>, 889 F.2d 47, 50 (4th Cir. 1989). (Docket Entry 12 at 8-10.) Plaintiff argues that, although the ALJ found her obesity to qualify as a severe impairment at step two, "[i]f the ALJ took [Plaintiff's] obesity into account after step two, he did it in utter silence." (Docket Entry 12 at 9.) The record does not support these contentions.[9]

In his decision, the ALJ noted as follows regarding Plaintiff's obesity:

> The Administrative Law Judge has evaluated [Plaintiff's] morbid obesity under SSR 02-1p, which states that obesity alone or in combination with another impairment must cause significant physical or mental limitations and the effects of any symptoms (such as pain or fatigue) functionally limit the claimant's ability to do basic work activities. The undersigned has considered the impact of obesity, as discussed in Social Security Ruling 02-1p, at each step of the sequential adjudication process and finds that [Plaintiff's] obesity is a severe impairment, but does not meet or equal the requirements of Social Security Regulation [sic] 02-1p.

(Tr. 17.) This language makes clear that the ALJ did consider Plaintiff's obesity, alone and in combination with her other impairments, at each step in the SEP. Although the ALJ's decision

---

[9] Notably, Plaintiff did not include obesity as an impairment on her Disability Report submitted to the Social Security Administration following her application for DIB, nor did she mention obesity when the ALJ asked her at the hearing what kinds of medical problems she had and how these problems kept her from working during her alleged closed period of disability. (Tr. 93, 273.)

16

may lack detailed explanation, substantial evidence supports the ALJ's determination that Plaintiff's obesity did not cause limitations beyond those he included in her RFC. In fact, Plaintiff's treating orthopedist, who was well aware of Plaintiff's weight, still opined that she retained the capacity for sedentary work. (Tr. 133.) Moreover, in her arguments to the Court, Plaintiff does not identify any unaddressed limitations that she believes her obesity causes. (Docket Entry 12 at 8-10.)[10] Under these circumstances, no basis exists for a remand. See Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3d Cir. 2005) (ruling remand for express consideration of obesity unnecessary where plaintiff failed to specify how her obesity would impact the ALJ's analysis); Skarbek, 390 F.3d at 504 (declaring no remand required where plaintiff failed to show, through objective evidence, "how his obesity further impaired his ability to work"); Miller v. Astrue, No. 2:06-00879, 2008 WL 759083, at *3 (S.D.W. Va. Mar. 19, 2008) (holding that "where an explicit discussion of the claimant's obesity will not affect the outcome of the case, remand is inappropriate").

The same conclusion pertains with respect to the ALJ's hypothetical questions to the VE at step five. In the second

---

[10] Again, to the extent Plaintiff argues that her obesity required her to take frequent breaks, as opined by Dr. Almekinders, as previously discussed, the jobs cited by the VE already encompass this restriction.

17

hypothetical (the one relied upon by the ALJ), the ALJ asked the VE whether an individual with the same age, education and work background as Plaintiff, and limited to the performance of sedentary work with a sit/stand option,[11] no frequent postural activities and no constant use of the hands, could perform any work existing in significant numbers in the economy. (Tr. 288-89.) The VE responded that such an individual could perform three different types of jobs that existed in significant numbers in the economy. (Tr. 289.) The ALJ's hypothetical question thus sufficiently reflected Plaintiff's limitations during her requested closed period of disability. See Johnson, 434 F.3d at 659 (finding no grounds for remand where ALJ's hypothetical question to VE "adequately reflected the claimant's characteristics at the date she was last insured"). In fact, the RFC propounded to the VE in the second hypothetical includes, if anything, a more stringent description of Plaintiff's limitations. (See Tr. 18, 288-89.)

In sum, Plaintiff's contentions regarding obesity lack merit.

**4. Severe Impairments**

In his decision, the ALJ identified two severe impairments: obesity and degenerative joint disease. (Tr. 16.) Plaintiff now

---

[11] The ALJ included the sit/stand option in his first hypothetical to the VE and, by implication, in the second hypothetical. (Tr. 288-89.) The VE made clear that she so understood in her later testimony that the Dictionary of Occupational Titles does not expressly address sit/stand options, but that she knew from her own experience and the testimony of individuals about those jobs that the three jobs she cited permitted the ability to alternatively sit or stand. (Tr. 289-90.)

18

contends that the ALJ erred at step two of the SEP by failing to categorize her back pain and bilateral carpal tunnel syndrome ("CTS") as additional severe impairments and at steps four and five by failing to consider these impairments in combination with her other impairments and by failing to include these impairments in the hypothetical questions to the VE. (Docket Entry 12 at 10-11.) The Court should reject these arguments.

An impairment is "not severe" if it constitutes only "a slight abnormality . . . that has no more than a minimal effect on the ability to do basic work activities." SSR 96-3p, <u>Policy Interpretation Ruling Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe</u>, at *1. Applicable regulations further provide that "basic work activities" include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

> (2) Capacities for seeing, hearing, and speaking;

> (3) Understanding, carrying out, and remembering simple instructions;

> (4) Use of judgment;

> (5) Responding appropriately to supervision, co-workers and usual work situations; and

19

(6) Dealing with changes in a routine work setting.
20 C.F.R. § 404.1521(b).

The plaintiff bears the burden of showing severity at the second step of the SEP.  See Hunter, 993 F.2d at 35 ("Through the fourth step, the burden of production and proof is on the claimant.").  Courts generally consider an impairment in any one of the above-quoted areas severe so long as it is not obviously slight, insignificant, or meaningless.  See Martin v. Heckler, 748 F.2d 1027, 1032 (5th Cir. 1984).  A plaintiff, however, must support any showing of severity with relevant medical evidence:

> A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis." Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity").  A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities.  Williams, 844 F.2d at 751.  However, the claimant must show more than the mere presence of a condition or ailment.  If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity.  Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).

> The determination at step two is based on medical factors alone.  Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003).  A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled.  20 C.F.R. § 404.1512(c).  The evidence that a

claimant has an impairment must come from acceptable
medical sources including licensed physicians or
psychologists. 20 C.F.R. § 404.1513(a). A claimant's
statements regarding the severity of an impairment is
[sic] not sufficient. <u>Adame v. Apfel</u>, 2000 WL 422341 at
*3-4 (D. Kan. March 20, 2000); <u>Flint v. Sullivan</u>, 743 F.
Supp. 777, 782 (D. Kan. 1990).

<u>Rivas v. Barnhart</u>, No. 05-1266 MLB, 2006 WL 4046153, at *4 (D. Kan.

Aug. 16, 2006) (unpublished).

Plaintiff fails to meet this burden. No medical evidence of

record suggests that Plaintiff's back pain had more than a minimal

impact on her ability to perform basic work activities. The

medical evidence in the record shows, at most, the existence of

degenerative disc disease at L4-L5 and L5-S1 with mild narrowing of

the right L5-S1 neural foramen, narrowed disc space at L3-L4 and no

significant spinal canal stenosis. (Tr. 107, 202, 206.)

Throughout the medical evidence, Plaintiff had only slight if any

limitation in her lumbar range of motion and no findings of

neurological impact, such as sensory, reflex or motor loss. (Tr.

202, 203, 247.) Further, although Plaintiff testified that she had

experienced back pain since an unspecified injury in 1999 (Tr. 267,

275), such pain did not prevent her from engaging in work at the

light to medium exertional level as a batch operator or from

operating a day care out of her home. (Tr. 268, 270-71, 288.)

Plaintiff further testified that her only treatment for her back

pain consisted of chiropractic adjustments and occasional pain

medication. (Tr. 275-76, 279.) Substantial evidence thus supported the ALJ's conclusion that Plaintiff's back pain failed to qualify as a severe impairment.

The same conclusion applies with respect to Plaintiff's bilateral CTS. The evidence reflects that Plaintiff first sought treatment of her CTS in May 2005 with complaints of chronic, intermittent numbness in her hands that woke her up from sleep. (Tr. 205.) Dr. Jane Satter assessed CTS and gave Plaintiff splints for both wrists. (Id.) In follow-up, Dr. Kimberly Barrie evaluated Plaintiff and diagnosed her with mild, bilateral CTS and gave Plaintiff new splints to wear during the nighttime. (Tr. 214-15.) In June 2005, Plaintiff reported continued numbness in her left hand, and Dr. Barrie injected Plaintiff's left wrist carpal tunnel with corticosteroids and limited Plaintiff to five pounds of lifting. (Tr. 217.) On June 27, 2005, Plaintiff reported to Dr. Barrie that she was not doing any better, and Dr. Barrie recommended nerve conduction studies. (Tr. 222-24.) Plaintiff admitted at the hearing that she never followed through with the recommended nerve conduction studies. (Tr. 276-77.) Plaintiff's next appointment with Dr. Barrie was scheduled for November 3, 2005, and Plaintiff failed to appear. (Tr. 225.) The record does not contain any further evidence of treatment for CTS. Plaintiff admitted at the hearing that, although she continued to wear her

22

splints at night, she had not experienced significant symptoms from her CTS after she left her job as a batcher operator which involved repetitive use of her hands. (Tr. 277.) Substantial evidence thus supports the ALJ's decision that Plaintiff's CTS had no more than a minimal impact on her ability to perform basic work activities.

Even if the ALJ erred by failing to identify Plaintiff's lower back pain and CTS as severe impairments, this error would not warrant remand. Where an ALJ has already determined that a plaintiff suffers from at least one severe impairment, any failure to categorize an additional impairment as severe generally cannot constitute reversible error, because, "upon determining that a claimant has one severe impairment, the Secretary must continue with the remaining steps in his disability evaluation." Maziarz v. Secretary of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987); accord Oldham v. Astrue, 509 F.3d 1254, 1256-57 (10th Cir. 2007); Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Lauver v. Astrue, No. 2:08CV87, 2010 WL 1404767, at *4 (N.D.W. Va. Mar. 31, 2010) (unpublished); Washington v. Astrue, 698 F. Supp. 2d 562, 579 (D.S.C. 2010); Jones v. Astrue, No. 5:07CV452FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (unpublished). In this case, the ALJ found two severe impairments and proceeded with the SEP. (Tr. 16-21.) As discussed in more detail below, the ALJ's RFC assessment and hypothetical questions to the VE sufficiently

encompassed Plaintiff's limitations from her back pain and CTS (whether classified as severe or not). Under such circumstances, any alleged improper application of law at step two caused Plaintiff no prejudice. See Oldham, 509 F.3d at 1256-57; Lewis, 498 F.3d at 911; Maziarz, 837 F.2d at 244; Lauver, 2010 WL 1404767, at *4; Washington, 698 F. Supp. 2d at 579-80; Jones, 2009 WL 455414, at *2.

In headings IV and V of her brief, Plaintiff asserts that the ALJ failed to consider her back pain and CTS in combination with her other impairments and failed to include them in his hypothetical questions to the VE. (Docket Entry 12 at 10.) However, Plaintiff did not develop or support these arguments in the body of her brief, focusing instead on her step two severity arguments. (Id. at 10-11.) In this regard, Plaintiff does not argue or otherwise demonstrate to the Court that her back pain and CTS caused additional limitations that the ALJ should have addressed in the RFC and hypothetical questions.

Moreover, the ALJ's RFC and hypothetical questions sufficiently accounted for any limitations caused by Plaintiff's back pain and CTS. The record evidence strongly indicates that Plaintiff's back pain represented a symptom or complication of her underlying knee impairment. For example, on October 28, 2005, Dr. Janet Dear recommended that Plaintiff use a cane, because her

24

limping from knee pain "is most likely what caused" her back pain. (Tr. 247.) Similarly, on November 15, 2005, Dr. Jane Satter opined that Plaintiff's low back symptoms resulted from "guarding and awkward position from knee pain." (Tr. 203.) The ALJ already sufficiently accounted for limitations caused by Plaintiff's knee pain (and thus, by extension, her back pain) in the RFC and hypothetical questions by restricting Plaintiff to sedentary work with a sit/stand option. (Tr. 17, 288-89.) Further, the ALJ adequately addressed Plaintiff's CTS symptoms in the RFC and hypothetical questions by precluding constant use of her hands. (Id.)

In sum, the ALJ properly evaluated Plaintiff's back pain and CTS at steps two, four and five.

## 5. Subjective Complaints of Pain

Finally, Plaintiff alleges that the ALJ erred in his evaluation of her subjective complaints of pain under Craig. (Docket Entry 12 at 11-13.) More specifically, Plaintiff claims that once the ALJ found at step one of the Craig pain analysis that she suffered from impairments that reasonably could produce pain as alleged, her testimony was "inherently credible" and "ought to believed unless there [were] *strong* reasons for finding it unworthy of belief." (Id. at 12 (italics in original).) Stated another way, Plaintiff contends that her subjective complaints were

25

entitled to "great weight" under <u>Combs v. Weinberger</u>, 501 F.2d 1361, 1362-63 (4th Cir. 1974), and that the ALJ erred by being "readily dismissive" of her pain testimony. (Docket Entry 12 at 12.) Plaintiff's arguments misread <u>Craig</u> and subsequent authority.

The Social Security Administration's <u>Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements</u>, as applied by the Fourth Circuit in <u>Craig</u>, 76 F.3d at 594-95, provides a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" <u>Craig</u>, 76 F.3d at 594 (quoting 20 C.F.R. § 404.1529(b)). Plaintiff has alleged no error with respect to this step. (<u>See</u> Docket Entry 12 at 12.)

Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an evaluation of the intensity and persistence of the claimant's pain, and the extent to which it affects his or her ability to work. <u>Craig</u>, 76 F.3d at 595. In making this evaluation, the fact finder:

> must take into account not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence

of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (internal citations and quotation marks omitted).

Here, the ALJ found as to part one of the inquiry that Plaintiff had impairments that reasonably could have produced the alleged symptoms. (Tr. 19.) However, contrary to Plaintiff's argument, Craig does not recognize a "great weight" rule which would give a "claimant a presumption of credibility at step two based upon a successful showing at step one." Smith v. Astrue, 457 F. App'x 326, 329 (4th Cir. 2011); accord Felton-Miller v. Astrue, 459 F. App'x 226, 229 (4th Cir. 2011). The Combs case from which Plaintiff draws her "great weight" language was decided over two decades before Craig and neither functions in relation to Craig as Plaintiff suggests nor applies under the circumstances of this case. See Smith, 457 F. App'x at 329; Felton-Miller, 459 F. App'x at 229.

At part two of the Craig analysis, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they conflicted with the RFC assessment. (Tr. 19.) In making this finding, the ALJ considered the fact that Plaintiff resumed operating her in-home daycare in April 2006, just six months after

27

her onset date of disability, and over time, added more children. (Id.) The ALJ further noted that Dr. Almekinders released Plaintiff to return to work without restrictions as of May 29, 2006, and that "[t]he record clearly shows an ability to perform sedentary work given the non-antalgic gait and lack of swelling or other deformity noted" on examination in June 2006. (Id.) The ALJ thus properly considered Plaintiff's subjective complaints for purposes of part two of the Craig pain analysis, and substantial evidence supports his findings.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11) seeking a reversal of the Commissioner's decision be **DENIED**, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be **GRANTED**, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

Date: February 6, 2013